John A. CURTIS and Dorothy Curtis,
Plaintiffs,

v.

PEERLESS INSURANCE COMPANY,
Floyd Adams, Jr., individually, and
Floyd Adams, Jr., dba M & M Bail Bond
Company, William Crowe, and William
Stewart, Defendants.

No. 1–68–Civ–288.

United States District Court
D. Minnesota,
First Division.

May 13, 1969.

A. E. Sheridan, Waukon, Iowa, and Robert T. Stich, Minneapolis, Minn., for plaintiffs.

H. H. McKnight, Memphis, Tenn., and Frederick A. Collatz, St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

In this action for false imprisonment, the threshold question, as it must be, is one of proper federal jurisdiction.

Plaintiff John Curtis seeks damages for false imprisonment, and for deprivation of his civil rights under the Civil Rights Acts, specifically §§ 1983 and 1985 of Title 42 U.S.C.A. Plaintiff Dorothy Curtis seeks damages for injuries allegedly sustained by her in her role as John's wife. Each attempts to mount jurisdiction on diversity of citizenship, 28 U.S.C.A. § 1332, and on the pursuit of redress for the deprivation of a federally guaranteed right, 28 U.S.C.A. § 1343. Defendants move to dismiss the complaint on the ground that the court is without jurisdiction over the subject matter of any of the claims.

I find: (1) that the values of the respective claims of the individual plaintiffs do not exceed $10,000 as is required by § 1332(a) of Title 28 U.S.C.A.; (2) that the plaintiff Dorothy Curtis is without standing to sue upon the alleged interference with the civil rights of her husband; and (3) that the lack of any allegation, of any showing, or of any attempt to demonstrate that the acts of defendants were done under color of state law as is required in actions under both §§ 1983 and 1985, renders that portion of the complaint relying on those provisions so insubstantial that the jurisdictional threshold of § 1343, Title 28 U.S.C.A. is not crossed. Hence, the complaint is dismissed because the court is without jurisdiction of the subject matter found therein.

Defendants' motion to dismiss was made before trial. However, at plaintiffs' request, they were afforded an opportunity to present testimony in support of jurisdiction as well as in support of their substantive case. Thus a full trial to a jury was had at the close of which the defendants' motion was renewed and granted.

The testimony and evidence disclosed the following tale: In December, 1965, John Curtis was living in Memphis, Tennessee, when and where he was indicted by the Shelby County Grand Jury for driving while intoxicated. In temporary response to that indictment, Curtis posted an appearance bond in the amount of $350.00 prepared by the defendant M and M Bail Bond Company agent for defendant Peerless Insurance Company. Defendant William Crowe, at the time a friend and fellow Legionnaire of Curtis, signed the bond as indemnitor. The bond contained a clause whereby the plaintiff agreed not to leave Shelby County without the permission of the sureties on the bond. Apparently through nonchalance more than calculated deceit, Curtis left Memphis without expressly notifying M and M or Crowe, and he returned to his home in Minnesota. Thereafter, he failed to appear at his trial.

Defendant Crowe soon discovered that the onus of the bond had come to rest on his head, and so by phone and by letter he implored John Curtis to "take care of the matter." But more than six months passed and Curtis did nothing. In June, 1967, Crowe and a friend of his, defend-

ant William Stewart, were appointed agents for M and M Bail Bond Company for the purpose of apprehending Curtis and returning him to the hands of the Shelby County Court where he had originally been admitted to bail.

Crowe and Stewart drove to Winona, Minnesota and laid in wait outside of Curtis's residence. When he appeared, they told him that they were going to see the sheriff. While it is not clear that Curtis initially understood what sheriff they were going to see, and while there is conflict in the testimony regarding the exact manner in which Curtis entered the defendants' car, it is clear that the apprehension was quite peaceable and that the defendants were not armed. In any case, the three men crossed the interstate bridge into Wisconsin and drove straight to the Shelby County Jail where John Curtis was deposited. The trip seems best characterized by the plaintiff's sullenness rather than by his recalcitrance. He apparently made no attempt to resist or to escape.

■■ Because of this enforced journey, John Curtis incurred travel and phone expenses and one week of lost wages—a total of not more than $150.00. Dorothy Curtis was compelled to expend $1,000.00 in attorney fees in order to free her husband from jail. In this action, John seeks compensatory damages of $100,000.00; his wife asks compensatory damages of $50,000.00; and together they claim punitive damages of $200,000.00. Despite these demands, I find that, to a legal certainty, the actual amount put in controversy by each of the plaintiff's claims does not exceed $10,000.00.[1]

■■ We begin with the plaintiffs' respective out-of-pocket expenses: $150.00 for John, and $1,000 for Doro-

thy. But each plaintiff claims a far greater sum is due: $100,000 and $50,-000 respectively, and $200,000 jointly. Generally, the presence of the jurisdictional amount is to be determined by the good faith allegations of the complaint. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Ringsby Truck Lines, Inc. v. Beardsley, 331 F.2d 14, 15 (8th Cir. 1964); Jackson v. Kuhn, 254 F.2d 555, 559 (8th Cir. 1958). Demands for punitive damages which are conceivably recoverable may be accounted in determining the existence of the jurisdictional amount. Bell v. Preferred Life Assur. Soc. of Montgomery, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); Gray v. Occidental Life Ins. Co. of California, 387 F.2d 935 (3d Cir. 1968), cert. den. 391 U.S. 926, 88 S.Ct. 1825, 20 L.Ed.2d 665 (1968); Dixon v. Northwestern National Bank of Minneapolis, *supra*, note 1.

■ However, if the existence of a jurisdictional element, such as the value in controversy has, as here, been controverted, the party claiming jurisdiction has the burden of proving its existence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Hulsenbusch v. Davidson Rubber Co., 344 F.2d 730 (8th Cir. 1965), cert. den. 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966); Ringsby Truck Lines, Inc. v. Beardsley, *supra*; Young v. Cooperative Refinery Ass'n, 320 F.2d 485 (10th Cir. 1963); Federated Mut. Imp. and Hardware Ins. Co. v. Steinheider, 268 F.2d 734 (8th Cir. 1959); Thomas v. Travelers Ins. Co., 258 F.Supp. 873 (E.D.La.1966).

■ The particular burden to be met by these plaintiffs is somewhat diminished by the rule of St. Paul Mercu-

---

1. It is clear that whatever claims the plaintiffs may have, they are separate and distinct claims, and as such, each party's total claim must be worth more than $10,000. Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F.2d 924 (8th Cir. 1965); Glicksman v. Laitman, 279 F. Supp. 425 (S.D.N.Y.1968); Dixon v. Northwestern Nat'l Bank of Minneapolis, 276 F.Supp. 96 (D.Minn.1967).

ry Indemnity Co. v. Red Cab Co., *supra*, that,

"it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." 303 U.S. at 289, 58 S.Ct. at 590.

Therefore,

"if from the face of the pleadings, or if from the evidence, the Court is satisfied to a legal certainty that plaintiff never was entitled to recover the jurisdictional amount, the suit should be dismissed." Jones v. Smith, 249 F.Supp. 624, 625 (E.D.N.C.1965).

See also, Parker v. Erie-Lackawanna System, 393 F.2d 229 (7th Cir. 1968); Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d 9 (5th Cir. 1962); Lind v. Canada Dry Corp., 283 F.Supp. 861 (D. Minn.1968); 1 Moore's Federal Practice ¶0.91 [1] et seq,; Barron & Holtzoff, Federal Practice and Procedure § 24. Thus, the party asserting that the required amount in controversy is present has only to show that it is not apparent to a legal certainty that it is lacking.

In fairness and in the spirit of abundant caution, plaintiffs were given the advantage of a full trial to show that they were or may have been entitled to recover more than $10,000 each. After hearing the testimony and the argument that followed, I find that the plaintiffs, neither of them, have met their burden.

John Curtis's out-of-pocket expenses amount to $150.00 at the most. He was never, during his ordeal, handled other than gently. While for a short time during the trip to Memphis handcuffs were applied, force was never used, and there was no evidence that force was ever threatened. Plaintiff has not shown that he was not allowed to telephone his wife during the trip, and in any case, by the time he arrived in Memphis he was allowed to call her.

She was thus without knowledge of his whereabouts for something less than twenty hours. Neither plaintiff claims to have been physically injured, but each claims resultant nervousness and temporary inability to sleep. I do not doubt that the experience was unnerving and upsetting, especially to Dorothy Curtis, but it appears that the shock required no special treatment, no real convalescence, and not even a change in life routine. John Curtis, in fact, resumed his work a few days after his return from Memphis. The mental suffering of each, even if compensable,[2] was of a distinctly transitory nature. What harm the plaintiffs may have suffered as a result of defendants' conduct could not, as a matter of law, support a verdict of over $10,000.

The plaintiffs also assert that the defendants' conduct was malicious and wanton and that therefore they are entitled to exemplary damages of $200,000. Principles of state law govern the nature of damages that may be recovered in a diversity action. Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961), reh. den., 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961); Davenport v. Mutual Benefit Health and Accident Ass'n, 325 F.2d 785 (9th Cir. 1963). In Minnesota, punitive damages may be recovered when the defendant acted with a malicious motive or wanton force. Benson Cooperative Creamery Ass'n v. First Dist. Ass'n, 276 Minn. 520, 151 N.W. 2d 422, 152 N.W.2d 182 (1967); 5B Dun.Dig., Damages § 2540 (3d ed.). I find, as a legal certainty, that the defendants' conduct was not in any sense malicious or wanton. Plaintiffs are not entitled to recover punitive damages.

As an alternative or additional basis for jurisdiction, the plaintiffs cite § 1343, Title 28 U.S.C.A., providing, inter

2. Minnesota law governs the allowance and propriety of damages. The case of State Farm Mut. Auto. Ins. Co. v. Village of Isle, 265 Minn. 360, 122 N.W.2d 36 (Minn.1963), indicates that under the circumstances of this case where wantonness or malice does not characterize the defendants' acts, (see discussion of punitive damages, *infra*) it is doubtful that plaintiffs could recover at all for mental suffering not accompanied by physical injury. 122 N.W.2d at 41. See also Note, 49 Minn.L.Rev. 763 (1965).

alia, for district court jurisdiction of actions brought under any Act of Congress providing for the protection of civil rights. Here, the acts of Congress relied upon are §§ 1983 and 1985 of Title 42 U.S.C.A.

■ The complaint alleges that the defendants conspired to, and did, violate the civil rights of John Curtis. Only that person whose civil rights are interfered with has standing to sue for the purported wrong. Tyree v. Smith, 289 F.Supp. 174 (E.D.Tenn.1968); Krum v. Sheppard, 255 F.Supp. 994 (W.D.Mich.1966); United States v. Biloxi Municipal School District, 219 F.Supp. 691 (S.D.Miss.1963), aff'd 326 F.2d 237 (5th Cir.1964); cert. den. 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964). Therefore, plaintiff Dorothy Curtis cannot gain a jurisdictional foothold upon § 1343.

■ Only that portion of the complaint wherein John Curtis seeks to recover for alleged violation of his civil rights remains to be disposed of. Curtis alleges that the defendants singly and together seized and arrested him in disregard of his constitutional right to be free from unlawful seizure. Actions for unlawful seizure are cognizable under the Civil Rights Acts. See e. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). But essential to any suit under either § 1983 or 1985 is the element of state action. The acts complained of must be done under color of state law. That is, the actor or his co-conspirators, whether they are made defendants or not, must be vested with actual or apparent authority of the sort commonly exercised by or derived from the state.[3] Plaintiff has not pleaded or dramatized even a vapor of evidence or argument that any of the defendants were acting under color of state authority. The short of it seems to be that the plaintiff is not convinced that the element of state action on defendants' part is essential to his cause.

■■ Usually where even the semblance of a federal claim is made, it is the better practice to assume jurisdiction, and upon finding that an essential element is lacking to dismiss the complaint upon the failure to state a claim upon which relief can be granted. Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Elders v. Consolidated Freightways Corp., 289 F.Supp. 630 (D.Minn.1968). Where, however, the federal claim is wholly insubstantial or only frivolous, it is permissible to dismiss the claim upon jurisdictional grounds. See e. g., Bell v. Hood, *supra*, 327 U.S. at 682–683, 66 S.Ct. 773; Cole v. Smith, 344 F.2d 721 (8th Cir. 1965); Stanturf v. Sipes, 335 F.2d 224 (8th Cir. 1964); Decrow v. Hotel Syracuse Corp., 288 F.Supp. 530 (N.D.N.Y.1968). Because the requirement of state action is so well established, and because plaintiffs made no attempt to meet that requirement, and because, in my independ-

---

3. See generally, Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Meredith v. Allen County War Mem. Hosp. Comm., 397 F.2d 33 (6th Cir. 1968); Jones v. Alfred H. Mayer Co., 379 F.2d 33 (8th Cir. 1967), rev'd. on other grounds, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Williams v. Hot Shoppes, Inc., 110 U.S.App.D.C. 358, 293 F.2d 835 (1961), cert. den. 370 U.S. 925, 82 S.Ct. 1562, reh. den. 371 U.S. 854, 83 S.Ct. 16, 9 L.Ed.2d 91 (1962); Elders v. Consolidated Freight-ways Corp., 289 F.Supp. 630 (D.Minn. 1968).

Two cases are especially illustrative of the principle as it applies here. In United States v. Trunko, 189 F.Supp. 559 (E.D.Ark.1960) the plaintiff claimed a deprivation of his civil rights arising from his arrest under a bail bond. The court found that because the arresting defendant was acting in his capacity as sheriff, state action was present. But in Thomas v. Miller, 282 F.Supp. 571 (E.D.Tenn.1968), where an arrest under a bail bond was, as here, effected by private citizens, state action was found lacking.

ent view, the acts of defendants in no sense partook of state power, I regard the plaintiffs' claim under §§ 1983 and 1985 to be so insubstantial that this court is without jurisdiction under § 1343.[4]

 Therefore, I find that the plaintiffs fail in all particulars to meet the jurisdictional requirements of this court. However, even if the jurisdictional essentials had been established, this court would not have been inclined to submit this case to a jury. I think the common law is clear that a surety on a bail bond, or his appointed deputy, may take his principal into custody wherever he may be found, without process, in order to deliver him to the proper authority so that the surety may avoid liability on the bond. So long as the bounds of reasonable means needed to effect the apprehension are not transgressed, and the purpose of the recapture is proper in the light of the surety's undertaking, sureties will not be liable for returning their principals to proper custody. See generally, 8 Am. Jur.2d, Bail and Recognizance §§ 114–119 (1963); 8 C.J.S. Bail § 87c (1962); Restatement, Security § 204, and accompanying comments (10a, b, and c; An-

not. 73 A.L.R. 1369 (1931); Taylor v. Taintor, 83 U.S. 366, 16 Wall. 366, 371, 21 L.Ed. 287 (1872); Fitzpatrick v. Williams, 46 F.2d 40, 73 A.L.R. 1365 (5th Cir. 1931); Thomas v. Miller, 282 F.Supp. 571 (E.D.Tenn.1968); McCaleb v. Peerless Ins. Co., 250 F.Supp. 512 (D.Neb.1965); United States v. Trunko, 189 F.Supp. 559 (E.D.Ark.1960). I find nothing to indicate that Minnesota takes a different or unique approach. See, 2 Dun.Dig., Bail § 726a; Note, 16 Minn.L.Rev. 197 (1931). In fact, the first clause of Minn.Stat. § 629.63 seems essentially to codify the common law.[5]

The defendants peaceably captured John Curtis as they had a right to do; and they took him posthaste to the custody of the authority which had admitted him to bail as they had a duty to do.

However, we are not obliged to definitively treat the question of the legality of defendants' behavior, as we have no jurisdiction of the controversy. The complaint is

Dismissed.

This expression is intended to comply with the requirements of Federal Rules of Civil Procedure, Rule 52(a).

---

4. Such a dismissal on jurisdictional grounds is not here designed to avoid the plaintiffs' chances to stay afloat on the light craft of pendant jurisdiction over their state claim. For it is made clear in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), that where the federal claim has dropped out for any reason, pendant jurisdiction over the remaining state law claim is largely a matter of discretion to be exercised in the light of judicial economy and convenience and fairness to the litigants. In such light we would dismiss the remaining state claim in any case, either way leaving the plaintiff free to pursue a remedy in the state courts.

5. "629.63 Surrender of Principal; Notice to Sheriff. When a surety for any person held to answer, upon any charge or otherwise, shall believe that his principal is about to abscond, or that he will not appear as required by his recognizance, or not otherwise perform the conditions thereof, he may arrest and take such principal, or cause him to be arrested and taken, before the officer who admitted him to bail, or the judge of the court before which such principal was by his recognizance required to appear, and surrender him up to such officer or judge; * * *." (The deleted remainder of the statute provides an alternative method of apprehension open to a surety.)